IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GREGORY L. SAIN, )
)
    Petitioner, )
)
v. ) Case No. 3:11-cv-834
)
ROLAND COLSON, ) Judge Sharp
)
    Respondent. )

## MEMORANDUM OPINION

Petitioner Gregory L. Sain was convicted and sentenced in January 2006 by the Circuit Court for Rutherford County in Murfreesboro, Tennessee after a jury trial. He is presently an inmate at Riverbend Maximum Security Institution in Nashville, Tennessee. Now before the Court is his *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.)

**I.    BACKGROUND and PROCEDURAL HISTORY**

Following a jury trial in the Rutherford County Circuit Court, petitioner Gregory L. Sain was found guilty on one count of delivery of a Schedule II drug to a minor, one count of possession of a Schedule II drug with intent to deliver, one count of introduction of contraband into a penal facility, one count of contributing to the delinquency of a minor, and one count of simple possession of marijuana.[1] Sain was originally sentenced as a persistent offender to twenty years in prison. After a successful appeal by the state, he was reclassified as a career offender for sentencing purposes, and his prison sentence was modified to thirty years. Sain was denied relief on direct appeal. *State v. Sain*, No. M2006-00865-CCA-R3-CD, 2008 WL 624924 (Tenn. Ct. Crim. App. March 6, 2008). The Tennessee Supreme Court denied Sain's request for permission to appeal in July 2008. Sain then filed a petition for post-conviction relief in the Rutherford County Circuit Court. This petition was denied pursuant to an order dated February 19, 2010, and the Tennessee Court of Criminal Appeals affirmed. *Sain v. State*, No. M2010-00654-CCA-R3-PC, 2011 WL 1601566 (Tenn. Ct. Crim. App. April 26, 2011). The Tennessee Supreme Court denied permission to appeal on August 25, 2011.

Sain promptly filed the instant petition for the writ of habeas corpus (ECF No. 1) on August 31,

---

[1] The jury determined that Sain was not guilty of an additional charge of resisting arrest. (ECF No. 21-1, at 104.)

2011, asserting the following grounds for relief:

> (1)  The trial court erred in denying the petitioner's motion to suppress prior to trial.
>
> (2)  The evidence was insufficient to support the petitioner's conviction of contributing to the delinquency of a minor.
>
> (3)  The petitioner's trial counsel was ineffective in that he failed to request a *Batson* hearing after the prosecutor used a peremptory challenge against an African-American juror.
>
> (4)  The petitioner's trial counsel was ineffective in that he failed to conduct a proper investigation into the evidence and the petitioner's case and to develop an effective trial strategy.
>
> (5)  The petitioner's trial and appellate counsel were ineffective in failing to challenge an improper jury instruction, specifically, the trial court's instruction regarding the elements of the offense of knowingly delivering a controlled substance to a minor.

(*See* ECF No. 1, at 5–13.)

After the petition was filed and the petitioner submitted the requisite $5.00 filing fee, the Court conducted a preliminary examination thereof and determined that it stated colorable claims for relief. Accordingly, the Court entered an order (ECF No. 9) directing the respondent to answer, plead or otherwise respond to the petition. Rule 4, Rules Gov'g § 2254 Cases.

The respondent submitted his answer (ECF No. 20) on November 29, 2011, to which the petitioner has offered no reply. Upon consideration of the petition, the answer, and the expanded record, the Court finds that an evidentiary hearing is not needed in this matter. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules Gov'g § 2254 Cases.

## II.    FINDINGS OF FACT

### A.    Evidence Presented at Trial

The facts underlying the petitioner's conviction were summarized by the Tennessee Court of Criminal Appeals as follows:[2]

---

[2] State appellate court findings of fact can constitute factual findings in a habeas action. *See, e.g.*, *Girts v. Yanai*, 501 F.3d 743, 749 (6th Cir. 2007); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Merissa Allen testified that she was born on September 19, 1986, and was seventeen years old on September 4, 2004, the date of her encounter with Defendant [Sain]. Ms. Allen said that she went to the Murfreesboro Billiards Club to meet friends. Approximately one hour after she arrived at the club, Ms. Allen went to the parking lot to get something out of her car. A grey vehicle pulled up behind her car. Ms. Allen said that the driver, whom she later identified as Defendant, was the only occupant of the vehicle. Defendant asked Ms. Allen if she knew of any other clubs in the area because he had just been evicted from the Country Club. Ms. Allen told Defendant that Conrad's was located in the Holiday Inn next to the interstate. Ms. Allen said that Defendant handed her something wrapped in a paper towel. Defendant told Ms. Allen to take the package and he would be back later. Ms. Allen said that she felt uncomfortable and scared. Ms. Allen memorized the license tag number of Defendant's vehicle before going back inside the club.

Ms. Allen told Dorothy Foster and Rita Dunn, the co-owners of the club, about the incident, and Ms. Foster called the police. Officer Sean Patrick Garrison with the Murfreesboro Police Department responded to the call approximately five to ten minutes later. Ms. Allen gave the package to Officer Garrison and told him Defendant's license tag number. Ms. Allen believed that Officer Garrison performed a field test on the substance in the package. Ms. Allen said that Officer Garrison then drove to Conrad's to try to locate Defendant's vehicle.

Ms. Allen went back inside the club and joined her friends at a table. A few minutes later, Defendant walked into the Billiards Club and sat down at the bar. Ms. Allen pointed out Defendant to Ms. Foster. Defendant then left the club. Officer Garrison returned to the club, and Ms. Allen identified Defendant's vehicle as it was leaving the club's parking lot. Officer Garrison followed Defendant in his patrol car. A short time later, Officer Garrison returned to the club with Defendant in the back seat of his patrol car. Ms. Allen identified Defendant as the person who had handed her the package earlier that evening.

On cross-examination, Ms. Allen said that her car was parked approximately thirty to forty feet from the entrance of the club and the parking lot was lit. Ms. Allen acknowledged that Defendant did not ask for her name, and she did remember Defendant asking to see her later that night. Ms. Allen said that Defendant did not ask for any money in exchange for the package. Ms. Allen said that Defendant did not approach her when he returned to the Billiards Club.

Officer Garrison testified that he spoke with Ms. Allen who told him that a man had approached her in the club's parking lot and had handed her a wrapped package. Officer Garrison said that Ms. Allen told him that the man had said that Ms. Allen should come to Conrad's later if she "wanted to have a good time because he had $300 worth more with him." Ms. Allen told Officer Garrison that the man was an African-American and was driving a silver car with a Tennessee license tag number of LQD 477. Officer Garrison said that the package contained a white powdered substance which he believed was cocaine.

Officer Garrison drove to Conrad's but did not locate the vehicle described by Ms. Allen. He returned to the Billiards Club to fill out an offense report, and Ms. Allen told him that Defendant had returned to the club but had left again. Officer Garrison and Ms. Allen went outside to fill out the forms. Ms. Allen told Officer Garrison, "That's him right there. He's leaving in his car." Officer Garrison observed a silver Mercury Cougar with license tag number LQD 477 leave the parking lot.

Officer Garrison stated that he was approximately twenty feet from the vehicle. The drivers' side window was down, and Officer Garrison identified Defendant as the driver of the vehicle. Defendant did not stop his vehicle when Officer Garrison told him to

do so. Officer Garrison got into his patrol car and activated his emergency equipment and the video tape recorder inside the vehicle. Officer Garrison followed Defendant's vehicle through a restaurant parking lot and on to West College Street. Defendant stopped his vehicle about nine-tenths of a mile from the Billiards Club.

Officer Garrison asked Defendant what had transpired at the Billiards Club earlier that night. Defendant acknowledged that he had been at the club but denied any knowledge of the incident described by Officer Garrison. Officer Garrison said that Defendant's pockets contained small torn pieces of a paper towel that were similar to the paper towel package that Ms. Allen had showed him. Officer Garrison placed Defendant under arrest and drove Defendant back to the Billiards Club where Ms. Allen identified him as the individual who had given her the package earlier that evening.

Defendant was taken to the Rutherford County Sheriff's Department for booking. Defendant consented to a search of his person. During the search, Defendant was asked to bend over and squat. Officer Garrison said that he observed a clear plastic baggie protruding from Defendant's buttocks. Defendant resisted the jail personnel's attempt to remove the baggie and was pepper sprayed. Two baggies were removed from Defendant after he was pinned to the ground. The smaller baggie contained what appeared to be a white powder, and the larger baggie contained marijuana.

On cross-examination, Officer Garrison said that he did not run a field test to identify the substance of the package given to Ms. Allen. Officer Garrison said that he went out to his car to retrieve a property envelope in which to store the package. Officer Garrison acknowledged that Ms. Allen provided him more details concerning the motor vehicle driven by Defendant than Defendant's personal appearance.

Deputy Charles Owens with the Rutherford County Sheriff's Department was on duty when Defendant was brought in for booking on September 4, 2004. Deputy Owens testified that Officer Garrison asked the jail staff to search Defendant. Defendant was taken into a room and asked to remove his clothes. Deputy Owens said that Defendant was calm at the beginning of the search. Deputy Owens observed a clear plastic bag protruding approximately two inches from Defendant's buttocks. Deputy Owens asked Defendant to give them the baggie several times. When Defendant did not comply, Deputy Owens and another jail employee grabbed him and tried to retrieve the baggie. Defendant began wrestling with them, and all three fell to the floor. After approximately five minutes, Deputy Owens sprayed Defendant with Freeze Plus P. Nurse Eric Walker removed the baggies after Defendant was subdued.

Rita Dunn testified that she was working at the Billiards Club on September 4, 2004. Ms. Dunn said that Ms. Allen came into the club and said that someone in the parking lot had given her something. Ms. Dunn took the package to the back of the club and called the police.

Glen Glenn testified that he was a special agent forensic scientist with the T.B.I. Agent Glenn said that he received three sealed packets from the Rutherford County Sheriff's Department on August 10, 2005. Two of the packets contained a white powder, and the third packet contained plant material. Agent Glenn testified that testing of the submitted material on August 16, 2005, revealed that packet 01–A contained 0.05 grams of cocaine, packet 02–A contained 0.4 grams of cocaine, and packet 02–B contained 1.3 grams of marijuana. Agent Glenn said that packet 01–A had a piece of paper inside the evidence bag, and the cocaine was inside the paper package.

*State v. Sain*, 2008 WL 624924, at *1–*3.

**B.     Post-Conviction Evidence**

The state appellate court summarized the evidence presented at the post-conviction hearing conducted on February 16, 2010 as follows:

> At the hearing, the petitioner [Sain] . . . testified that he informed trial counsel, that he wanted to be consulted and have input regarding the use of peremptory challenges during jury selection. The petitioner asked trial counsel to request a *Batson* hearing after the district attorney issued a peremptory challenge against an African American female juror. However, a *Batson* hearing was not conducted. During trial counsel's cross-examination, he admitted that he did not have any recollection of the petitioner's request for a *Batson* hearing. Trial counsel also testified that he had no independent memory of the facts associated with the district attorney's challenge in order to determine whether a *Batson* hearing would have been appropriate.
>
> The petitioner also testified that trial counsel did not conduct a proper investigation into the petitioner's case. Specifically, trial counsel did not conduct an independent investigation of the scene or interview the victim. In addition, trial counsel failed to subpoena employees of the Murfreesboro Billiard Club or subpoena surveillance records. The petitioner noted that this evidence was crucial, given that there was discrepancy in the testimony at trial as to whether the petitioner approached Ms. Allen. According to the petitioner, the surveillance would have revealed that he did not approach Ms. Allen. In addition, the surveillance would have also established that both the petitioner and Ms. Allen were inside the club. Because the club was an adult facility, which required that patrons be twenty-one years old to enter, the surveillance would also establish that the petitioner did not have knowledge that Ms. Allen was a minor.
>
> The petitioner also challenged trial counsel's failure to object to improper jury instructions regarding the charge of delivery of a schedule II drug to a minor. The petitioner alleged that the instructions misidentified the elements of the offense because they failed to require the jury to find, beyond a reasonable doubt, that the petitioner had knowledge that the recipient was a minor. According to the petitioner, Ms. Allen's age was a crucial issue throughout the trial. After the trial, the petitioner was represented on appeal by appellate counsel. The petitioner testified that he asked appellate counsel to challenge the jury instructions. However, appellate counsel did not address the issue in his appellate brief. The petitioner argued that the failure of counsel to address the improper jury instructions constituted ineffective assistance of counsel.
>
> The petitioner also testified that he was entitled to post-conviction relief based on a violation of his protection against double jeopardy. The petitioner testified that the same evidence was used to support the charges of possession with the intent to deliver, simple possession, and introduction of contraband into a penal facility.
>
> During trial counsel's direct examination, he stated that he had been an attorney since 1991. According to trial counsel, in preparation for the petitioner's case, he requested discovery from the state and met with the petitioner to discuss the case. During the meeting, trial counsel showed the petitioner the pleadings and witness list provided by the state. Trial counsel stated that he spoke with the petitioner about witnesses that the petitioner wanted to call. However, trial counsel did not call any witnesses. Instead, he chose to cross-examine the state's witnesses.

*Sain v. State*, 2011 WL 16015662, at *4–*5.

## III.    ANALYSIS OF CLAIMS

The respondent concedes that the petitioner has properly exhausted all the claims raised in his present petition, and they all appear to concern federal constitutional issues that were fairly presented to

the Tennessee state courts for consideration as required by 28 U.S.C. § 2254(b)(1)(A). Nonetheless, as set forth below, the Court finds that none of the claims provides a valid basis for habeas relief.

### A. Standard of Review

Even when a petitioner's application for a writ of habeas corpus raises federal constitutional claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of the issues remains quite limited. The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Additionally, this court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995). With these principles in mind, the court will examine the claims raised in Sain's habeas petition.

### *(1) Whether the trial court erred in denying the petitioner's motion to suppress prior to trial*

In Ground One, Sain argues that the trial court erred in denying his pretrial motion to suppress, because the police officer who stopped Sain's vehicle lacked the "specific and articulable facts to support an investigatory stop." (ECF No. 1, at 5.) In other words, Sain claims that the investigatory stop that led to his arrest violated the Fourth Amendment's prohibition against unreasonable searches and seizures because it was not supported by reasonable suspicion, based on specific and articulable facts, that the

petitioner had committed a crime or was about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

Prior to his trial in the state court, Sain, by and through counsel, filed a motion to suppress all evidence obtained during his arrest on September 4, 2004. (ECF No. 21-1, at 13.) The presiding judge conducted a hearing on the motion on January 17, 2006, at which Sain was represented by counsel, and both Marissa Allen and Officer Shawn Garrison testified. Allen testified that Sain gave her a packet containing a substance later confirmed to be cocaine; the police were called and Garrison arrived within minutes after Allen had received the packet, and Garrison believed the packet contained illegal narcotics. In addition, Allen gave him a description of Sain's vehicle and the license plate number. Within an hour of Garrison's arrival, Allen pointed Sain out to Garrison as the man who had given her the packet, while Sain was driving by in a vehicle that matched the description and license plate number Allen had previously provided to Garrison.

On January 18, 2006, the trial judge issued a written opinion denying Sain's motion, finding specifically that both Allen and Garrison were reliable witnesses, and holding that the seizure at issue was reasonable under the Fourth Amendment because it was based upon probable cause to believe a felony had been committed. The trial judge specifically found that the information upon which the arrest was based had been provided to the arresting police officer by a citizen informant who was presumptively reliable as a matter of Tennessee law, since she was not part of the criminal milieu and did not provide the information in exchange for any sort of consideration from the police. (ECF No. 21-1, at 51–52.) Accordingly, the trial judge allowed into evidence at trial the drugs and other items found on Sain's person after his arrest.

Sain's counsel raised the issue again on direct appeal, arguing that Officer Garrison did not have specific or articulable facts to support an investigatory stop of Defendant's vehicle. The Tennessee Court of Criminal Appeals rejected Sain's argument, and held that the search was reasonable under the Fourth Amendment and *Terry v. Ohio*, because the information given to Officer Garrison by Merissa Allen "provided reasonable suspicion supported by specific and articulable facts in order to conduct an investigatory stop of Defendant's vehicle." *State v. Sain*, 2008 WL 624924, at *6.

It is well established that where a state "has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the

ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court: "First, the 'court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.'" *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

Sain has not alleged here that Tennessee lacks a procedural mechanism for presenting a Fourth Amendment claim, and in fact the record establishes, as set forth above, that Sain implemented the existing mechanism and availed himself of the opportunity to raise his Fourth Amendment claim through the filing of a pretrial motion to suppress, participation in a hearing on the motion to suppress, and then a post-trial direct appeal to the Tennessee Court of Criminal Appeals, which considered the legal aspects of his claim *de novo*. Sain clearly had the opportunity to fully and fairly litigate his Fourth Amendment claims in the Tennessee courts. His claim is therefore not reviewable in this federal habeas corpus proceeding. *Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001).

### (2) That the evidence was insufficient to support the petitioner's conviction of contributing to the delinquency of a minor

The Fourteenth Amendment to the United States Constitution requires the state to prove every element of a criminal offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). Because Sain was convicted of contributing to the delinquency of a minor, the appropriate constitutional inquiry is whether, in the light most favorable to the state, "any rational trier of fact" could have found Sain guilty beyond a reasonable doubt. *Id.* at 319.

Sain's sufficiency-of-the-evidence argument has two facets: First, he asserts that the evidence is insufficient to support the finding that he approached Merissa Allen and gave her drugs at all. Second, he asserts that even if those premises are assumed to be true, there is no evidence that Sain "knowingly" contributed to the delinquency of a minor, because he had no way of knowing Allen was a minor. The Tennessee Court of Criminal Appeals rejected the latter argument on the basis that another panel of that court had already concluded that a defendant's knowledge of a victim's age is not an essential element of the offense of contributing to the delinquency of a minor. *Sain v. State*, 2008 WL 624924, at *7 (citing

*Bentley v. State*, 552 S.W.2d 778 (Tenn. Crim. App. 1977) (affirming defendants' convictions for contributing to the delinquency of a minor despite evidence that the seventeen-year-old victim "had physical attributes of a much older woman" and told defendants she was eighteen). Thus, Sain's lack of knowledge of Allen's age was immaterial.[3] A state court's application of state law is not reviewable on habeas corpus. *See Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." (citations and internal quotation marks omitted)).

And with respect to Sain's first argument, the Tennessee Court of Criminal Appeals conducted a thorough review of the elements of the offense at issue and the evidence presented in support of Sain's guilt on that charge, and determined that a rational trier of fact could conclude beyond a reasonable doubt that Sain was guilty of the offense of contributing to the delinquency of a minor. That ruling was based on a reasonable determination of the facts in light of the evidence presented at trial. This issue is without merit.

### *(3) That the petitioner's trial and appellate counsel were ineffective*

Sain argues that his trial counsel was ineffective for (a) failing to request a *Batson* hearing after the prosecutor used a peremptory challenge to strike an African-American woman from the jury panel; (b) failing to properly investigate the case and develop and effective trial strategy; and (c) failing to challenge an improper jury instruction.

The last claim is most easily disposed of: Sain objected to the instructions provided for the charge of possession with intent to deliver a Schedule II controlled substance to a minor, because the instructions did not require the jury to find that Sain "intended to deliver a controlled substance to an individual who he 'knowingly' understood to be a minor." (ECF No. 1, at 13.) The Tennessee Court of Criminal Appeals rejected the claim based on its determination, as a matter of state law, that the jury instruction to which *Sain* objects was correct, because Tennessee law does not require knowledge that

---

[3] The court further noted that "the requirement of a culpable mental state, with respect to each element of the offense, has application only to crimes codified in title thirty-nine. Because the misdemeanor crime of contributing to the delinquency of a minor is codified in title thirty-seven, the mental culpability requirement of Tennessee Code Annotated section 39-11-301(b) has no application to this offense." Id. at *7 (citation omitted).

the person to whom the controlled substance is delivered is a minor. Again, the state court's rejection of a claim based on a state law ground that is independent of the federal question and adequate to support the judgment is not reviewable by this Court. *Walker v. Martin*, 131 S. Ct. at 1127.

As pertains to Sain's remaining claims, for a habeas petitioner to show that he is entitled to habeas relief based on an ineffective-assistance claim, the petitioner must show that the state court's rejection of his argument was contrary to or an unreasonable application of clearly established federal law. *Hinkle v. Randle*, 271 F.3d 239, 247 (6th Cir. 2001). Sain raised his ineffective-assistance claims on direct appeal, and the Tennessee Court of Criminal Appeals correctly identified *Strickland v. Washington*, 466 U.S. 668 (1984), as the operative federal standard. Under that standard, to prevail on an ineffective-assistance claim brought on direct appeal, a defendant must first show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To prove this element, the defendant must first demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. Second, the defendant must prove that he was prejudiced by his counsel's unprofessional errors; that is, that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

After referencing that standard, the appellate court held that Sain had not shown by clear and convincing evidence, as required by Tennessee law for success on post-conviction claims, Tenn. Code Ann. § 40-30-110(f), that his counsel's performance was actually deficient or that any alleged failures on the part of his counsel were prejudicial to Sain. Because Sain has not established the state court's adjudication of his ineffective-assistance claims involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence before the state court, he is not entitled to habeas relief on the basis of these claims, considered separately or in the aggregate.

## IV.      CONCLUSION

Sain's petition is entirely without merit. The petition will therefore be denied and this matter dismissed.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order

adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. The petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the COA must "indicate which specific issue or issues satisfy the [required] showing . . . ." 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337. Courts should not issue a COA as a matter of course. *Id.*

In this case, there is no question that the petition fails to state any viable basis for federal habeas relief. Because any appeal by the petitioner on the issues raised in this petition does not deserve attention, the Court will deny a certificate of appealability.

Further, Rule 24(a)(3) of the Federal Rule of Appellate Procedure provides that a party who was permitted to proceed *in forma pauperis* in the district court may proceed on appeal *in forma pauperis* unless the district court certifies that an appeal would not be taken in good faith or otherwise denies leave to appeal *in forma pauperis*. For the same reasons the Court will deny a certificate of appealability, the Court will certify that any appeal would not be taken in good faith.

An appropriate order will enter.

Kevin H. Sharp
United States District Judge